UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COEY A. BROWN,

                Plaintiff,

v.

MEIJER STORES LIMITED PARTNERSHIP,

                Defendant.

Case No. 24-CV-594-JPS

**ORDER**

1. **INTRODUCTION & BACKGROUND**

In May 2024, Plaintiff Coey A. Brown ("Plaintiff"), proceeding pro se, sued her former employer Defendant Meijer Stores Limited Partnership ("Defendant" or "Meijer")[1] for discrimination (both disparate treatment and hostile environment) based on various protected classes, as well as sexual harassment, experienced during the course of her employment. ECF Nos. 1, 3-1. She also alleges retaliation for having reported the discrimination. ECF No. 1 at 7; ECF No. 3-1 at 23, 61.

Defendant now moves to dismiss the complaint "in its entirety" for failure to exhaust administrative remedies, or, in the alternative, to strike any allegations "related to conduct that occurred prior to March 23, 2022" as untimely. ECF No. 10; ECF No. 11 at 2. For the reasons discussed herein, the Court will deny the motion in its entirety and order that this case be

---

[1] Plaintiff purported to sue Fred Meijer Corporate Office, which Defendant avers is not a legal entity. ECF No. 11 at 1 n.1. "Meijer Stores Limited Partnership . . . is the correct legal entity." *Id*. The Court will accordingly order that the Clerk of Court replace Fred Meijer Corporate Office on the docket with Meijer Stores Limited Partnership.

stayed pending the Equal Employment Opportunity Commission's ("EEOC") disposition of Plaintiff's first charge of discrimination (the "First Charge").

## 2. FACTS[2]

### 2.1 Plaintiff's Experience at Meijer

Plaintiff began working at Meijer in Wauwatosa, Wisconsin in May 2021. ECF No. 1 at 2; ECF No. 12-1 at 2. She alleges that beginning in September 2021, she was discriminated against by her direct supervisor, Jodi Caudill ("Caudill"), ostensibly on the basis of race, national origin, religion, heritage, and culture. *Id.;* ECF No. 1 at 6. Plaintiff specifically alleges that Caudill has: subjected her to less favorable terms and conditions of employment based on her race; given her more difficult job assignments; threatened her with disciplinary action for conduct that co-workers of other races frequently do and for which they are not threatened with disciplinary action; harassed her and other Black employees for using the bathroom; placed her on the work schedule outside of her availability; showed favoritism to the White and Spanish employees; spread rumors about Plaintiff; and mandated only the Black employees to attend a meeting about

---

[2]The Court has compiled this factual background from Plaintiff's pro se complaint, ECF No. 1, her authorized supplemental submissions, ECF Nos. 3-1, 5, 7, 7-1, 16, 16-1, and the exhibits attached to Defendant's counsel's declaration, ECF No. 12-1. *See Clark v. Law Office of Terrence Kennedy, Jr.,* 709 F. App'x 826, 827 (7th Cir. 2017) ("We accept as true the allegations in [the] amended complaint and its attachments, which include [plaintiff's] previously filed administrative charges . . . ." (citing Fed. R. Civ. P. 10(c) and *Arnett v. Webster,* 658 F.3d 742, 751–52 (7th Cir. 2011)); *Gutierrez v. Peters,* 111 F.3d 1364, 1356 n.7 (7th Cir. 1997) ("[F]acts alleged in a brief in opposition to a motion to dismiss . . . as well as factual allegations contained in other court filings of a pro se plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint.") (collecting cases).

following guidelines. ECF No. 12-1 at 2; ECF No. 1 at 6, 8–9 ("[Caudill] treats the [W]hite and [S]panish employees better than [B]lack employees."); ECF No. 3-1 at 21.

For example, in November 2021, Plaintiff was eating in the break room when Caudill came in and said, "I thought [yo]u was Jamaican," "that chicken stinks," and "all you people eat is chicken." ECF No. 3-1 at 56. Plaintiff responded that she "eat[s] other things," to which Caudill said, "I know[,] you eat chicken and watermelon . . . ." *Id.*

In February 2022, Caudill told Plaintiff that she couldn't wear certain pants. *Id.* at 56. Plaintiff responded that a White employee wore the same kind of pants. *Id.* To this, Caudill responded, "You know [B]lack women are shaped differently." *Id.*

On another occasion in May 2022, Plaintiff called the police on Caudill because Caudill was following Plaintiff around the store and repeatedly calling her name over the loudspeaker. ECF No. 1 at 4. The police responded, instructed Caudill and Plaintiff to stay away from each other, and confirmed that Caudill's following Plaintiff around and repeatedly calling her constituted harassment. *Id.* On that occasion, Caudill ostensibly had taken issue with Plaintiff's footwear, even though she was not entirely certain if it violated company policy, and Plaintiff later confirmed that her footwear was compliant. *Id.* at 4–5. Plaintiff alleges that she was traumatized and did not feel safe working with Caudill because Caudill had threatened to have her fired on multiple occasions. *Id.* at 5. The store director thereafter told Plaintiff that Meijer couldn't move her to a different department away from Caudill because of understaffing. *Id.*

Plaintiff also alleges that Caudill used racial slurs "like coon but would pretend that she [wa]s talking about a racoon," and that Caudill

accused Plaintiff's "black ass" of hiding merchandise in the fitting rooms. *Id.* at 7. Plaintiff reported this to the store director in January 2022. *Id.* at 7. Plaintiff infers that the store director informed Caudill of Plaintiff's allegations because the next day, on January 27, 2022, Caudill retaliated against Plaintiff by continuing to accuse Plaintiff of stealing and threatening to get Plaintiff fired. *Id.* Plaintiff claims that Caudill also retaliated against her by not scheduling Plaintiff in accordance with her availability, forcing her to work on days when she needed to be off work for her religious meetings, and refusing to correct her timecard. ECF No. 7 at 2. The store director told Plaintiff that the three of them would have a meeting about Caudill's behavior, but such meeting never occurred. ECF No. 1 at 7–8.

Plaintiff also alleges that Caudill took her phone from her but never did that to a White employee who is always on a video call at work. *Id.* at 8 ("[Caudill] catches Helen on the phone all the time and laughs about it."); ECF No. 3-1 at 21. Similarly, Plaintiff alleges that when she or other Black employees use the bathroom while on the clock, Caudill harasses them and repeatedly calls their name over the loudspeaker, but when White or Spanish employees are missing for hours at a time, Caudill does nothing. *Id.* at 23–24.

Plaintiff also alleges that from approximately January 2022 moving forward, she was denied a reasonable accommodation for a medical condition; specifically, she claims that Caudill refused to accept her medical notes for absences and instead assessed her disciplinary attendance points. ECF No. 12-1 at 2; ECF No. 1 at 9, 11–12 ("I told [Caudill] I had to be light duty and she still told me to lift things including tables . . . even after showing her my doctor's excuse . . . ."); ECF No. 3-1 at 23–24.

Caudill also refused to allow Plaintiff to have Sundays off even though Plaintiff informed her that she has religious meetings on Sundays. ECF No. 3-1 at 23. Plaintiff represents that she missed over five religious meetings due to Caudill's refusal to give her that time off. *Id.* at 24 ("[Caudill] said she doesn't care about my religion because I shouldn't work in retail [and] that I should find a job that isn't open on the weekends.").

She also alleges that she was sexually harassed by the Human Resources Regional Director, Devontray Green ("Green"). ECF No. 1 at 3. Green asked other Meijer employees about Plaintiff, was very unprofessional, called Plaintiff after work hours and told her he was "in the shower," and made sexual advances towards Plaintiff. *Id.* at 5–6; ECF No. 3-1 at 20. He also told Plaintiff that he agreed that Caudill was racist. ECF No. 1 at 5; ECF No. 3-1 at 18. Plaintiff reported the sexual harassment to Meijer's Human Resources Regional Director, Melanie Mahan ("Mahan"). ECF No. 3-1 at 20. Green was eventually terminated following an investigation. *Id.* at 3, 57.

Plaintiff also relayed her experiences of discrimination and harassment by Caudill to Mahan. ECF No. 3-1 at 18. Plaintiff alleges that Mahan told her that what happened between her and Caudill was "in the past" and that it was time to "move forward." ECF No. 1 at 6. Plaintiff felt that this response was dismissive. *Id.*

Plaintiff asserts that Green terminated her employment in October 2022 when he informed her that he had sent her a termination letter by mail, which she had not received, and he confirmed for her in person that she was terminated. ECF No. 3-1 at 4. Nevertheless, Green attempted to add Plaintiff back into the system as an employee and told her to return to work

on Sunday. *Id.* Plaintiff did so but was unable to clock in. *Id.* at 4, 30 (screenshot of clock-in page reading that "the employee does not have an active status"); ECF No. 1 at 6. Green later called her after work hours, said he was "in the shower," that she "ha[d] to work 15 hours a week but that" they "could work out something," which Plaintiff interpreted as an offer for hours in exchange for sex. ECF No. 3-1 at 4, 20 ("I said work out what[?] [H]e said you know . . . ."), 61. Plaintiff refused, to which Green responded that she was terminated. *Id.* at 4.

Plaintiff later applied for unemployment benefits. *Id.* at 47. She was awarded benefits after it was determined that her "discharge was not for misconduct or substantial fault connected to her employment." *Id.* ("Based on the best available information, the employee was discharged for refusing her employer's unreasonable request.").

### 2.2 Charges of Discrimination

Plaintiff filed charges of discrimination with the EEOC and Wisconsin's Department of Workforce Development, Equal Rights Division (the "DWD") over the course of her employment. She filed the First Charge with the EEOC on February 26, 2022. ECF No. 12-1 at 2. In it, she alleged the following:

> In May 2021, I began working for Respondent. Since around September 2021, I have been subjected to different terms and conditions of employment based on race by my supervisor, in that I have been given more difficult job assignments, have been threatened with disciplinary action for things my co-workers of a different race frequently do, and have been placed on the work schedule even though my listed availability showed I was not available. Since around that time, I was denied a religious accommodation of no work on Sunday mornings. I have made several complaints of discriminatory treatment during my employment. Since

Page 6 of 15
Case 2:24-cv-00594-JPS   Filed 07/31/24   Page 6 of 15   Document 20

> around January 2022, I was denied a reasonable accommodation for my medical condition, in that my supervisor did not accept my medical notes for my absences, and instead assessed me attendance points under Respondent's attendance system. I believe I was discriminated against on the basis of race (African American), disability, and religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended[,] and Title I of the Americans with Disabilities Act of 1990, as amended.

*Id.* The First Charge remains pending with the EEOC, and no right-to-sue letter has not been issued thereon. *Id.* at 5.[3]

Plaintiff filed her second charge of discrimination (the "Second Charge") simultaneously with the EEOC and the DWD on January 17, 2023. ECF No. 12 at 2; ECF No. 12-1 at 7–15. In the Second Charge, Plaintiff asserted discrimination based on her race ("Black"), her religion ("Jehovah Witness"), her sex ("Female"), her national origin/ancestry ("African / Jamaican"), and her disability ("my back"). ECF No. 12-1 at 7. She also noted that she opposed the discrimination. *Id.* She represented that the discrimination began on October 25, 2022 and extended to November 2, 2022, but she went on to recount incidents that occurred well outside of this time period. *Id.* at 7–13.

---

[3]Plaintiff represents in her briefing that the EEOC denied her First Charge but reinstated it and issued her a right-to-sue letter following an appeal. ECF No. 15 at 1–2 ("It is true initially the EEOC denied first claim because I did not send in all my evidence then I appealed the decision followed the process and was granted the notice 'right to sue' letter."). This does not appear to be accurate; one of Defendant's attorneys avers in a sworn affidavit that the First Charge remains pending with the EEOC, ECF No. 12 at 2, a screenshot of the online status of the First Charge appears to list it as pending, ECF No. 12-1 at 5, and Plaintiff did not include in any of her filings a right-to-sue letter applicable to the First Charge. The only right-to-sue letter that she specifically references and attached to her filings appears to be that issued on February 16, 2024 in response to the Second Charge.

In a Preliminary Determination and Order dated October 6, 2023, the DWD concluded that "[a] portion of the complaint d[id] not meet" state statutory timeliness requirements. *Id.* at 17. Specifically, the DWD concluded that Plaintiff's allegations of discrimination occurring prior to March 23, 2022 were untimely "due to the 300-day statute of limitations." *Id.* at 18. The same day, the DWD issued an "Initial Determination—No Probable Cause," concluding that there was no probable cause to believe that Meijer violated the Wisconsin Fair Employment Law. *Id.* at 21–22. The DWD accordingly dismissed Plaintiff's complaint. *Id.* at 22.

On February 16, 2024, the EEOC issued a right-to-sue letter to Plaintiff based on the Second Charge. ECF No. 7-1. It noted that Plaintiff had ninety days within which to sue. *Id.* at 1. Plaintiff did so, filing the instant action on May 14, 2024.

### 3. STANDARD OF REVIEW

#### 3.1 Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). In reviewing the complaint, the Court is required to "accept as true all of the well-

Page 8 of 15
Case 2:24-cv-00594-JPS   Filed 07/31/24   Page 8 of 15   Document 20

pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

### 3.2 Rule 12(f)

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## 4. LAW & ANALYSIS

### 4.1 Motion to Dismiss

Defendant moves to dismiss the complaint in its entirety under Rule 12(b)(6) for failure to exhaust administrative remedies.[4] Defendant argues that because Plaintiff's First Charge, which covers the period of allegations from September 2021 to February 2022,[5] remains pending with the EEOC and no right-to-sue letter has issued thereon, Plaintiff failed to exhaust her administrative remedies and prematurely filed her case such that it should be dismissed in its entirety. ECF No. 11 at 4–5.

It is true that "[b]efore filing suit under Title VII, a federal employee must exhaust his administrative remedies." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013) (citing *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003)); *Hill*, 352 F.3d at 1145 ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies . . . which

---

[4] "[F]ailure to exhaust claims are evaluated under Fed. R. Civ. P. 12(b)(6)." *Aguilar v. Dep't of Veterans Affairs, Agency*, No. 1:18-CV-393-HAB, 2019 WL 2299989, at *7 (N.D. Ind. May 29, 2019).

[5] Defendant represents that the First Charge covers "the period between October 1, 2021 and February 2, 2022," ECF No. 11 at 6, but Plaintiff wrote in the First Charge that she began experiencing discrimination in the workplace since "around September 2021." ECF No. 12-1 at 2.

means not until he has received a right-to-sue letter from the EEOC . . . ." (citing 42 U.S.C. § 2000e–16(c))). That makes sense; "[i]f plaintiffs could sue before then, the time of the courts and of lawyers would be wasted with cases that ended up being resolved or abandoned at the administrative level." *Hill*, 352 F.3d at 1145 (citing *Tolbert v. United States*, 916 F.2d 245, 249 n.1 (5th Cir. 1990) (per curiam); *Wade v. Sec'y of Army*, 796 F.2d 1369, 1376–78 (11th Cir. 1986); and *Purtill v. Harris*, 658 F.2d 134, 138 (3d Cir. 1981)).

Nevertheless, the Court does not agree that Plaintiff's failure to receive a right-to-sue letter on her First Charge prior to suing means that her action in its entirety—including her allegations going to the Second Charge—must necessarily be dismissed at this juncture. Dismissal is, certainly, one option. *Hill*, 352 F.3d at 1145–46 ("If, however, through ignorance of proper procedures a plaintiff jumps the gun, suing before he has exhausted his administrative remedies, . . . [i]t can be dismissed as premature . . . without prejudice.") (collecting cases). But it is not the only option. *Janik v. Buhrke Tech Int'l,* 4 F. Supp. 2d 777, 779–80 (N.D. Ill. 1998) ("The Seventh Circuit cited a variety of solutions for the plaintiff who encounters a looming statute of limitations deadline on one claim while the EEOC is still processing a charge on another claim." (citing *Herrmann v. Cencom Cable Assocs., Inc*., 999 F.2d 223, 225 (7th Cir. 1993))).

Post-filing receipt of a right-to-sue letter can cure the deficiency of its original absence. *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991) (collecting cases). It is an option, therefore, for the Court to stay the case and hold it in abeyance pending the EEOC's resolution of the First Charge. *Janik,* 4 F. Supp. 2d at 780 (noting that a plaintiff to whom the EEOC has issued a right-to-sue letter on one charge of discrimination but not another "could request the EEOC to accelerate the administrative process or 'sue on his

other claims, ask the court—and . . . he would have a strong case for doing so—to stay the proceedings until the Title VII administrative process is complete, and then if the process does not end in a way that satisfies him[,] amend his complaint to add a Title VII count.'" (quoting *Herrmann*, 999 F.2d at 225)).

Granting a stay is certainly not a default course of action, and if circumstances were simpler—for example, if Plaintiff had merely filed a single charge of discrimination with the EEOC and prematurely sued before receiving a right-to-sue letter on that single charge—there would be no reason to consider it. But the circumstances here are different. Plaintiff filed two charges of discrimination and, for whatever reason, the EEOC appears to have formally resolved the Second Charge while leaving the First Charge—filed with the EEOC roughly eleven months earlier— pending. This put Plaintiff in somewhat of a confusing position. If she had waited to sue until she also received a right-to-sue letter on the First Charge, review of her allegations from the Second Charge would have been time barred. It is therefore understandable that she went ahead and filed her lawsuit when she did, joining all her employment discrimination and harassment related allegations in a single complaint.

In light of the foregoing, the Court concludes that dismissal of Plaintiff's entire action based on the absence of a right-to-sue letter on an earlier-filed charge of discrimination is not the appropriate course of action at this juncture. Accordingly, the Court declines Defendant's motion to the extent that it seeks dismissal of the entire action on that basis.

### 4.2 Motion to Strike

Alternatively, Defendant moves the Court to strike as untimely those allegations in the complaint "related to conduct that occurred prior to

March 23, 2022." ECF No. 11 at 2, 6 ("[A]ny allegations set forth in Plaintiff's Second Charge that occurred prior to March 23, 2022 were untimely based upon the 300-day statute of limitations, as found by DWD in its Preliminary Determination and Order.").

Defendant cites to no legal authority whatsoever in support of its statute of limitations analysis, including for its implicit assertion that Wisconsin's 300-day statute of limitations controls here. The Court provides legal authority here where Defendant failed to do so: "A Title VII plaintiff normally must first file a charge with the EEOC within a specified period of time after the challenged employment action occurs." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). "The applicable limitations period for filing a charge varies depending on whether the state in question has an agency empowered to address employment discrimination." *Id.* "In states that have an employment-discrimination agency," such as Wisconsin, "the limitations period is lengthened to 300 days or 30 days after the state agency terminates its investigation, whichever is earlier." *Id.* n.7 (citing 42 U.S.C. § 2000e-5(e)(1) and 29 C.F.R. § 1601.13(b)).

In addition to not citing any legal authority, Defendant fails to undertake any actual analysis in this portion of its motion. It merely asserts that any of Plaintiff's allegations that occurred prior to March 23, 2022 are untimely because the DWD said so. ECF No. 11 at 6. Defendant references the 300-day statute of limitations, apparently assuming without explanation that it is that period, rather than "30 days after the state agency terminates its investigation," that applies. *Id.*; *Adams*, 742 F.3d at 729 n.7 (citing 42 U.S.C. § 2000e-5(e)(1) and 29 C.F.R. § 1601.13(b)). Defendant further relies on the DWD's determination of untimeliness, but it does not independently demonstrate the correctness of that determination or cite

anything to suggest that DWD's determination is binding on, or even persuasive to, this Court.

Defendant's cursory and superficial references to the statute of limitations and Plaintiff's pre-March 23, 2022 allegations are insufficient, and the Court deems the argument forfeited. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))). The Court has neither the time nor the inclination to do Defendant's work for it, particularly given that Defendant is a represented party. If the Court were to conclude otherwise, it would only be encouraging and inviting lawyers to submit unsupported and cursory briefing, knowing that the Court would nevertheless finish the analysis for them. Defendant's motion is therefore additionally denied to the extent that it was grounded in a statute of limitations argument.

5.  **CONCLUSION**

For the reasons discussed herein, the Court declines Defendant's invitation to dismiss Plaintiff's case in its entirety based on the pending nature of the First Charge. *See supra* Section 4.1. The Court also concludes that Defendant's alternative argument to strike based on the statute of limitations is underdeveloped and accordingly forfeited. *See supra* Section 4.2. Defendant's motion is therefore denied in its entirety.

In light of the foregoing, the Court will order that this matter be stayed and held in abeyance pending action by the EEOC on the First Charge. The parties shall file a status report within seven (7) days of the EEOC's resolution/disposition of the First Charge, attaching to such filing a copy or screenshot of the EEOC's disposition. If the EEOC declines to

Page 13 of 15

Case 2:24-cv-00594-JPS    Filed 07/31/24    Page 13 of 15    Document 20

pursue the First Charge and issues a right-to-sue letter thereon, the parties shall attach to their status report a copy of the right-to-sue letter.

Finally, the Court notes in parting that several of the additional "deficiencies" that Defendant highlights with Plaintiff's complaint are not really deficiencies at all and were not worth bringing to the Court's attention. ECF No. 11 at 2 n.2, 6. Defendant points out that Plaintiff failed to invoke the Court's jurisdiction by explicitly identifying Title VII or the Americans with Disabilities Act ("ADA") and failed to plead discrete counts. *Id.* But none of that is expected or required from a pro se plaintiff. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this."); *id.* at 1077 (rejecting the notion that "a complaint must plead law as well as fact").

Accordingly,

**IT IS ORDERED** that the Clerk of Court shall replace Fred Meijer Corporate Office on the docket with Meijer Stores Limited Partnership;

**IT IS FURTHER ORDERED** that Defendant Meijer Stores Limited Partnership's motion to dismiss or in the alternative to strike, ECF No. 10, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **STAYED** pending action by the Equal Employment Opportunity Commission on Plaintiff Coey A. Brown's first charge of discrimination, dated February 26, 2022, and designated Charge Number 443-2022-01269; and

**IT IS FURTHER ORDERED** that the parties shall file a status report within seven (7) days of the EEOC's resolution/disposition of the First

Charge, attaching to such filing a copy or screenshot of the EEOC's disposition; if the EEOC declines to pursue the First Charge and issues a right-to-sue letter thereon, the parties shall attach to their status report a copy of the right-to-sue letter.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge